Thank you counsel for their helpful arguments. Our next case on the docket is Vernile v. Pacifica Foundation. I would like to reserve three minutes out of my ten. Thank you. Your Honors, my name is Arthur Schwartz. I am the counsel to the Pacifica Foundation in this appeal. The Pacifica Foundation is a non-profit 501C3 foundation that owns five radio stations around the United States, just for some background. This case is important to our client, not partly because $300,000 is a big hit on their budget, but also because it involves speech, ultimately speech on somebody's station replaying some speech that was given publicly back in 2019. But the basic background here is Mr. Vernile was hired by Pacifica as an interim executive director for a six-month period. Six weeks after he became the ED, he took the New York station, WBAI, off the air without a vote of the executive board. He substituted his own programming, fired all the staff, subsequently refused to acknowledge the vote of the board to put the station back on air. Counsel, I think we understand the facts. I guess if I could turn to the arbitration itself. In their arbitration demand, they indicated, as I understand it, in their demand they actually indicated that one of their claims was of defamation. They included that in their demand, and they were actually even more specific than that. They actually said, including statements and radio broadcasts. So I guess as I understand the argument here, you're indicating that you didn't have sufficient notice about that. Is that correct? Well, first, let's go to the first demand that they made was actually on November 15th, which that was a subsequent letter or form. They filled that out at AAA. They did say something about radio broadcasts, and then throughout the rest of the litigation, and even there's a page attached to that saying, please describe your claim. It didn't describe any defamatory claims at all. And so our assumption was – Well, hold on. Why would you assume that? You had a year and seven months during arbitration, as I understand it. That's when the demand was made, and ultimately the decision was held. During the year and seven months, there was no – at no point did you ask for clarification about what the defamatory statements were? Because the arbitrator asked for pre-arbitration briefs where we were supposed to lay out our proof. And in the pre-arbitration brief that Bernil submitted, which is in the record, he, his lawyer, did not mention defamation. Not one word about it. We intend to prove A, B, C, D, E, F, G. He was a whistleblower. Pacifico was violating this law, that law, and the other law. They did this. Here are the facts. Never said a word about defamation. So we go into the arbitration assuming that the word defamation, he's just using as another term to describe being terminated. Well, he said defamation in the demand, but he also said defamation by radio broadcast, specifically that. I understand if it were just defamation, a word, maybe that might be confusing. But if I receive a demand and a claim saying that, you know, you've made some defamatory statements in a radio broadcast, I would say, what are those radio broadcasts? And you had a year and seven months to figure that out, and you didn't request interrogatories, you didn't request depositions of this, you didn't do any of those things, did you? Well, that's not true. We exchanged, there were 500 documents exchanged each way. On this point, though? They gave us 14, I'll call them tapes, they were online MP3s, with about 50 hours of radio broadcasts. They went literally up to two months before the trial, so they were two years after his termination. And then that came along with the – I have to go back to the demand for arbitration, because the arbitration clause in the contract, which I think is really the key, key, key issue here, the arbitration clause said that it used the words arising out of the employment agreement or termination. And this circuit, whether you apply Ninth Circuit law or you apply California law, which we think the judge was proper below in applying Ninth Circuit law, this is described as a narrow clause. The court's state typically includes language that requires arbitration arising from or arising out of an agreement. So the defamation clause, the defamation claim, whether we knew that he wrote the word defamation or not, the defamation claim was not part of the arbitration clause to begin with. So the arbitration clause was not concerning, was not related to – and there were two different kinds of clauses. That's really critical here, because an arbitrator – and there's no such thing as a waiver of an arbitrator's jurisdiction. The arbitrator had jurisdiction under that clause. That clause said – again, as I said, it's a narrow clause. It said arising out of his employment or termination of employment. And there's a plethora of cases that we cite in our original brief on page 22 and our reply on page 11 that make a distinction between broad arbitration clause and narrow arbitration clauses. We went into this case believing that we were talking about things that happened during his employment, not six weeks later, which is the only broadcast the arbitrator focused on was one that was six weeks after he was terminated on December 19. Who wrote the arbitration agreement? Who wrote the contract? The record shows that there was – and it's in the record here – there were laypeople back and forth and back and forth. There were various drafts that went back and forth to say that it was written by one side and signed by the other here. There was a then-executive director or chair of the board here in California. Mr. Verniel was in New York. They were sending drafts back and forth. Mr. Verniel added phrases to it, including that he could continue to do work on some other projects that he was working on. So this was not a unilaterally imposed and was not an attorney-created document. I am now the general counsel. I go over those agreements, but that wasn't the fact here. And the record shows that there was back and forth. That record – in fact, the arbitrator had in front of her some of the back and forth that went on to create the agreement there. In fact, it wasn't even clear whether it was something that was called draft or something that was called final because one was signed – the draft was signed after the final. But they basically had the same arbitration clause in them. So the arbitration clause – Counsel, you're down to two minutes. Do you want to reserve time? I had reserved – That's your total time, so you're down to two minutes. Do you want to reserve the balance? I will. Wait. Okay. Good morning. I'm Stephen Jaffe. Seated at the table here is Arthur Lazier, who was Mr. Bernal's counsel in the arbitration. I was his counsel in the district court. First, I'll try to address a few of the things Mr. Schwartz said, and then I'll turn to my own argument. There were two attempts to start this arbitration. The first one was made by Mr. Lazier to Mr. Schwartz, asking Pacifica, please start an arbitration. We have a dispute. Pacifica did nothing for six months. It took Pacifica six months to finally get things going. Judge Mendoza, you took a couple of my really good points, but you're correct. There never was any discovery on these radio broadcasts, and I find it particularly interesting when Mr. Schwartz stood here a few moments ago and said they provided us with tapes. With tapes. How can Mr. Schwartz stand here and say we didn't know what the defamation claim was when Mr. Bernal and his counsel provided Pacifica with tapes, which they contend included the very defamation? Counsel, can I just get to the point of my concern in this case, and that is it seems highly unusual to me that you had an arbitration hearing where evidence was presented and none of the evidence for the defamation claim was presented in the course of that proceeding, and it came after. Why did that happen that way? Your Honor, respectfully, I don't believe it did. There was some evidence about the defamation claim presented, and it's in the record in the trial court. My understanding is the tapes with the statements that you focus on as being evidence of defamation and ultimately that the arbitrator relied on in finding defamation occurred were submitted post-hearing. Is that right? That is correct, but there was oral testimony during the arbitration regarding the defamation claim, and there was. Why didn't you submit the evidence during the course of the proceeding in the arbitration? During the arbitration? I can't speak to that. I was not counsel. I don't know. Obviously, there may have been an arrangement for post-hearing evidence to be submitted. I believe that's what happened. There was an arrangement between counsel or an agreement between counsel for post-hearing evidence to be submitted. I mean, that's the best information I have. So I'll try to make a very short point here. Nothing that Mr. Schwartz said to you a few minutes ago constitutes a cognizable legal ground for reversing. Let me stop you and go back to the point you just made, which is there was an agreement for post-counsel evidence to be submitted. That's consistent with what's allowed within the arbitration rules, correct? Yes, sir. All right, thank you. That is correct. Mr. Schwartz did not present any cognizable legal ground for reversing or disturbing this arbitration award. There's only two legal grounds under both California law and the FAA, doesn't matter, they're very close in text, for turning around or reversing an arbitration award. The first one is bias or a conflict of interest on the part of the arbitrator. Didn't hear anything about that. The second ground is a blatant and irrational disregard of the law by the arbitrator. We didn't hear anything about that. Without those, the arbitration award has to stand. Mr. Schwartz contends the arbitrator exceeded her authority by including the defamation claim in the award and in the proceeding. However, that argument fails for the following reasons. First of all, Pacifica imposed the mandatory arbitration award on Mr. Verneal. They're the ones who brought up arbitration. I've never heard of an employee asking for a job and saying, oh, by the way, as part of the job, can I please agree to arbitration? I don't think, and that's almost all my practice. Pacifica selected the AAA as the arbitral forum to conduct the arbitration, thus asking and applying AAA's arbitration rules to govern the proceeding. Pacifica selected Dana Welsh to be the arbitrator, and the AAA arbitration rules to which Pacifica required Mr. Verneal to adhere say that the scope of the arbitration is within the sole discretion of the arbitrator. The scope of the arbitration, whether it includes defamation or not, is within the sole discretion of the arbitrator. That's the rule which Pacifica required Mr. Verneal to follow. What Pacifica really seeks to do, and why Mr. Schwartz started in on the facts here, is to relitigate the arbitration in this court, something all of the laws and authorities that I submitted in my brief cited prohibit this court from doing. In any event, once again, Judge Mendoza, you brought this up, Pacifica never objected to the inclusion of the defamation claim, never. Whether from the inception of it, when it's first mentioned, down to the submission of the tapes, there never was an objection. If ever there was a waiver of that point and that defense, that was it. I want to make kind of a verbal footnote here. I commend to the court the case of Sun Roast Resources v. Conrad, 956 F. 3rd, 335, regarding whether or not this appeal has got sufficient merit to not be characterized as frivolous. I'd be glad to answer any questions the court may have. Thank you, Counsel. Thank you very much. In my two minutes, Learned Counsel ignores lots of case law that there are many grounds under the California Arbitration Act that we focus on, it doesn't just have to be irrational. The court was right that the broadcast, in fact, the word defamation came up maybe five times on 12 pages of a seven-day hearing. But it's pled in the arbitration demand. You would agree with that? No, what I agree is it said defamation doesn't say, it does say, first of all, the arbitration demand, which is in the record at pages 943 to 944, and the follow-up, that's 3 ER 943. I may be looking at the wrong one, but I'm looking at 148, where it says, Respondent and its agents authorized representatives, and its authorized representatives also defamed claimant in statements made in writing and orally. Right, you just said something about broadcast that doesn't say anything about broadcast. Not including in radio broadcast. The original arbitration demand, which is on pages 943 to 944, says, I am protesting my termination as being in violation of the terms of my employment agreement and in violation of federal and California state laws pursuant to the terms of my employment contract. I am invoking and requesting arbitration with the AAA. Then the next day his lawyer wrote and said, I appear for him. California law can be applied to any litigation concerning Bernil's employment. Not a word about defamation. Six months later, when we had to get around to getting an arbitrator appointed by AAA on that form, it said he was defamed in writing and orally. That's all he said. He didn't say in broadcast subsequent to my termination. I just said including in radio broadcast is what I read. But he doesn't say, because radio broadcasts were going on while he was employed. But did you, in fact, object to the scope before the arbitrator? No, because when we got to the arbitration, the pre-arbitration briefs where we laid out what we were seeking, there was nothing in the brief, nothing in that pre-arbitration brief, which is in the record, that said a word about defamation. Not a single word. And that pre-hearing brief is at 468 to 490. It doesn't have a word about defamation, intentional infliction of emotional distress, broadcast, or anything of that sort. So we knew when we walked in the door. Counsel, you're over time. Thank you. Any more questions from the bench? No. All right. Thank you for your argument. The matter of Bernil v. Pacifica Foundation is submitted.
judges: THOMAS, FORREST, MENDOZA